# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

David Burns,

            Plaintiff

v.

Ted Hanf, et al.,

            Defendants

Case No. 2:19-cv-00722-CDS-NJK

**Order Granting Defendants' Motion for Summary Judgment and Closing Case**

[ECF No. 38]

       Incarcerated pro se plaintiff David Burns brings this § 1983 lawsuit against a prison nurse and two prison doctors, alleging that they were deliberately indifferent to his medical needs related to a fracture in his pinky finger. Defendants Gregory Martin, Dr. Ted Hanf, and Dr. Richard Wulff move for summary judgment, arguing that Burns failed to exhaust his administrative remedies, as required by the Prison Litigation Reform Act (PLRA), and that he failed to allege each of the defendants' personal participation in the deprivation of his rights. Because Burns did not bring a grievance against Martin within the timeframe set by Administrative Regulation 740 (AR 740) propounded by the Nevada Department of Corrections' (NDOC), and therefore failed to exhaust his administrative remedies, I grant summary judgment in Martin's favor. Further, summary judgment is also appropriate as to the claim against Dr. Hanf because Burns fails to show that Dr. Hanf ever treated him for his finger injury. Dr. Wulff is also entitled to summary judgment because the only grievance that Burns filed after being seen by Dr. Wulff does not explain what Dr. Wulff did or did not do that was deliberately indifferent to Burns's medical needs. As no claims remain, I direct the Clerk of Court to close this case.

I.      Background

Burns is incarcerated and he lived at Ely State Prison when the underlying events began. Am. Compl., ECF No. 7 at 1. On May 21, 2017, Burns filed a medical kite complaining of pain in his finger and indicating that he could not bend it. *Id.* at 4–5. The following month, Martin, a nurse, diagnosed Burns with a possible arthritic inflammatory issue and prescribed him indomethacin and capsaicin cream. ECF No. 7 at 5. The defendants contend, and Burns does not dispute, that Martin also ordered Burns a rheumatoid panel, an autoimmune panel, and a bilateral x-ray. Def.'s Mot. Summ. J., ECF No. 38 at 3. The defendants also contend that Burns refused to have his x-ray taken when prison staff arrived to take him to his x-ray appointment. *Id.* As a result, Burns did not receive an x-ray for his hand at that time. *Id.* Burns does not dispute this assertion either.

In February 2018, medical staff x-rayed Burns's hand. ECF No. 7 at 4. Non-party Dr. Pillsbury[1] then examined Burns's x-rays and denied him further relief. *Id.* According to Dr. Pillsbury, Burns's x-ray showed no acute fracture in his pinky finger. Pl.'s Med. Rs. ECF No. 41-1 at 8. Instead, Dr. Pillsbury diagnosed Burns with osseous fusion of the fifth finger proximal interphalangeal joint and a dorsal displacement of the middle phalanx with respect to the proximal phalanx. *Id.* On May 1, 2018, Martin again examined Burns's pinky and referred him to an orthopedic specialist, Dr. Wulff. ECF No. 41-1 at 10, 22. That same month, Burns filed an informal grievance alleging that Martin denied him treatment and provided him the wrong medication. ECF No. 38-9.[2] In June 2018, Burns transferred from Ely State Prison to High Desert State Prison.

On August 10, 2018, Dr. Wulff examined Burns's hand and concluded that Burns's injury was two years old and required no further intervention. ECF No. 49 at 2, 3. A few months later

---

[1] Pillsbury was named as a defendant but was never served with this lawsuit. ECF No. 79. Pursuant to Rule 4(m) of the Federal Rules of Civil Procedure, he has been dismissed and is no longer a party. ECF No. 79.

[2] The defendants filed the grievances as exhibits. Burns does not dispute their authenticity.

2

in December, Dr. Hanf evaluated Burns. ECF No. 41-1 at 23. Burns alleges that Dr. Hanf treated his finger, but the medical records show that Dr. Hanf treated Burns for a skin lesion. *Id.*

## II.  Legal standard

### a.  Summary-judgment standard

"The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court." *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994). Summary judgment is appropriate when the pleadings, the discovery and disclosure materials on file, and any affidavits "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). An issue is "genuine" if there is a sufficient evidentiary basis on which a reasonable factfinder could find for the nonmoving party, and a dispute is "material" if it could affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Where reasonable minds could differ on the material facts at issue, however, summary judgment is not appropriate. *Id.* at 250–51. "The amount of evidence necessary to raise a genuine issue of material fact is enough 'to require a jury or judge to resolve the parties' differing versions of the truth at trial.'" *Aydin Corp. v. Loral Corp.*, 718 F.2d 897, 902 (9th Cir. 1983) (quoting *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 288–89 (1968)). A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex*, 477 U.S. at 323–24.

The moving party—the one seeking summary judgment—bears the initial burden of informing the court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *Id.* at 323. Once the moving party satisfies the requirements of Federal Rule of Civil Procedure 56, the burden shifts to the party resisting the motion to "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256. At the summary-judgment stage, "a court's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial."

*Assur. Co. of Am. v. Ironshore Specialty Ins. Co.*, 2015 WL 4579983, at *3 (D. Nev. July 29, 2015) (citing *Anderson*, 477 U.S. at 249). In evaluating a summary-judgment motion, a court views all facts and draws all inferences in the light most favorable to the nonmoving party. *Kaiser Cement Corp. v. Fischbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986).

   b. *Exhaustion of administrative remedies under the PLRA and AR 740*

  "In an effort to address the large number of prisoner complaints filed in federal court, Congress enacted the Prison Litigation Reform Act of 1995 (PLRA)." *Jones v. Bock*, 549 U.S. 199, 202 (2007) (citing 42 U.S.C. § 1997e). "To that end, Congress enacted a variety of reforms designed to filter out the bad claims and facilitate consideration of the good. Key among these was the requirement that inmates complaining about prison conditions exhaust prison grievance remedies before initiating a lawsuit." *Id.* at 204. The PLRA's exhaustion provision states that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other [f]ederal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "Requiring exhaustion allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court." *Jones*, 549 U.S. at 204.

  Nevada Department of Corrections' (NDOC) Administrative Regulation 740 (AR 740) governs the grievance process for NDOC inmates and sets forth the procedures that inmates must follow to resolve an alleged violation of the inmate's civil rights in Nevada. ECF No. 38 at 7; AR 740, Ex. G, ECF No. 38-8. The grievance structure is essentially a multi-level dispute resolution mechanism, under which an inmate must satisfy each level's substantive and procedural requirements before filing a higher-level grievance. *See generally id.* First, the inmate must attempt to resolve the matter by other means, such as discussion with staff or submitting an inmate request form. ECF No. 38-8 at 7. If the matter is not resolved after this, the inmate must file an informal grievance within six months of the alleged violation. *Id.* at 8. The grievance must factually demonstrate a loss or harm and the remedy that will satisfy the claim in the

grievance. *Id.* at 5. If the informal grievance fails to provide the requested relief, the inmate may file a first-level grievance, and if that fails, a second-level grievance. *Id.* at 10–12. An inmate exhausts his administrative remedies either after a denial of the second-level grievance or if the grievance is granted at any level. *Id.* at 12.

III.  Discussion

    a.  *Burns failed to file a timely grievance against Martin as to treatment occurring before October 10, 2017.*

Martin seeks summary judgment on Burns's medical-indifference claim, arguing that Burns did not exhaust his administrative remedies as required by the PLRA. ECF No. 38 at 9. Burns refutes this. ECF No. 49 at 3–4. He argues that his deliberate-indifference claim accrued when Dr. Pillsbury denied him treatment on February 17, 2018. *Id.* at 4. However, Burns's argument acknowledges that Martin's treatment prior to October 10, 2017, was unexhausted.

According to the record, Martin treated Burns for his finger pain between June 2017 and May 2018. ECF No. 38-3 at ¶ 7, 11. Martin first treated Burns on June 15, 2017, when he prescribed Burns pain medication and ordered an x-ray for his finger. *Id.* at ¶ 7. Martin treated Burns for a second time in February 2018, when he ordered Burns a second x-ray after Burns refused to undergo the first one. ECF No. 41–1 at 3, 4, 21. Martin treated Burns for a final time in May 2018 after Burns again complained about the pain in his finger. *Id.* at 22. At the May 2018 appointment, Martin wrote Burns an orthopedic referral and prescribed him pain medication. *Id.* at 10.

AR 740.05(4)(A) requires inmates to file an informal grievance within six months of the alleged violation. Inmates who fail to do so abandon their claim. AR 740.05(8). Burns did not file his first informal grievance about Martin's treatment until April 10, 2018. ECF No. 38-9 at 74. Six months before that date was October 10, 2017. Thus, any treatment that Martin provided Burns before October 10, 2017, is abandoned because the treatment falls outside of AR 740's six-month deadline. Based on this timeline, Martin's May 2017 treatment for Burns's finger is unexhausted.

So because there is no genuine dispute over the material fact as to whether Burns exhausted his administrative remedies with respect to Martin's May 2017 treatment of Burns's finger, I grant summary judgment in Martin's favor on Burns's claim for deliberate indifference regarding Burns's May 2017 treatment.

    b. *Burns's 2018 grievance does not identify how Martin was deliberately indifferent to his medical needs.*

  I now turn to Burns's allegations about Martin's treatment of Burns's finger between February 2018 and May 2018. Martin argues that Burns's grievance does not pertain to him because Burns did not name Martin in it. While the grievance (Grievance 2006-30-64124) does not explicitly name Martin, it appears to be partially about him and his treatment of Burns's finger. The grievance states that "[Burns] was **reseen** by the provider in 2018 sometime in Feb[r]uary . . . [and t]he provider was supposed to give [him] a higher dosage of pain medication, yet [he] was given Omeprazole which made [him] sick and had nothing to do with this medical issue." ECF No. 38-9 at 74–76 (emphasis added). Before February 2018, Martin was the only defendant who treated Burns's finger pain. *See generally* ECF No. 41-1; ECF No. 38-3; ECF No. 38-6; ECF No. 38-7. Thus, Martin was the only person who could have reseen Burns; the records do not identify anyone other than Martin as the nurse who treated Burns for his finger pain on multiple occasions. While I construe this claim as identifying Martin as the provider over whom Burns grieved, I find that he is entitled to summary judgment for his 2018 treatment of Burns's finger because Burns fails to identify how Martin was deliberately indifferent to his medical needs.

  A prison official violates the Eighth Amendment when he acts with "deliberate indifference" to the serious medical needs of an inmate. *Farmer v. Brennan*, 511 U.S. 825, 828 (1994). The Ninth Circuit uses a two-part test for deliberate-indifference claims and requires a plaintiff to "satisfy both an objective standard—that the deprivation was serious enough to constitute cruel and unusual punishment—and a subjective standard—deliberate indifference." *Snow v.*

*McDaniel*, 681 F.3d 978, 985 (9th Cir. 2012). For the first prong, "the plaintiff must show a serious medical need by demonstrating that failure to treat [his] condition could result in further significant injury or the unnecessary and wanton infliction of pain." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (internal quotations omitted). For the second prong, he must show "(a) purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." *Id*. An inmate's disagreement with the physician regarding his treatment does not amount to deliberate indifference. *Toguchi v. Chung*, 391 F.3d 1051, 1058 (9th Cir. 2004).

Burns cannot satisfy either prong. The record demonstrates that every time Martin treated Burns's finger, Burns was provided with adequate care. Burns was prescribed pain medication on multiple occasions and was ordered to receive multiple x-rays for his hand. ECF No. 38-3 at 3; *see generally* ECF No. 41-1. When Burns's x-ray showed that he did not have an acute fracture, Martin then referred Burns to an orthopedic specialist based on Burns's continued complaints about the pain in his hand. ECF No. 38-3 at ¶ 11; ECF No. 41-1 at 8, 9. Burns alleges that Martin should have provided him different medical care, such as "set[ting] a splint or anything that would hold a fractured finger in place." ECF No. 49 at 5. But Burns's response equates to a disagreement with Martin's treatment plan. That is not enough to satisfy the deliberate indifference test. *See Toguchi*, 391 F.3d at 1058 (an inmate's disagreement with the physician regarding his treatment does not amount to deliberate indifference). Burns cannot point to any evidence that Martin should have provided different or additional medical care, and he fails to demonstrate how Martin was deliberately indifferent to his pain or injury. Therefore, Martin is entitled to summary judgment on Burns's 2018 deliberate indifference claim against him.

   c. *Burns does not show how Dr. Hanf personally participated in the treatment of his finger.*

Burns alleges that Dr. Hanf was deliberately indifferent to his medical needs related to his finger, but Dr. Hanf claims that he never treated Burns's finger. In his sworn declaration, Dr.

Hanf stated that he never reviewed x-rays of Burns's hands or fingers, nor did he provide any treatment related to his hands or fingers. ECF No. 38-7 at ¶ 8. Instead, Dr. Hanf treated Burns for a toe injury and general complaints of pain. *Id.* Burns's medical records support Dr. Hanf's position. According to those records, Dr. Hanf treated Burns for a skin lesion and general complaints of pain on August 10, 2018. ECF No. 41-1 at 11, 23. There is no evidence that Dr. Hanf treated Burns's finger and thus no genuine dispute as to Dr. Hanf's involvement or any action that might give rise to a medical indifference claim against him. Therefore, I grant summary judgment in Dr. Hanf's favor.

        d.        *Burns's January 2019 grievance does not identify how Dr. Wulff was deliberately indifferent to his medical needs.*

Burns alleges that Dr. Wulff was deliberately indifferent to his medical needs when he determined that Burns's finger fracture did not require further intervention. ECF No. 49 at 3. As noted above, the Ninth Circuit uses a two-part test for deliberate-indifference claims (*Snow*, 681 F.3d at 985), which Burns does not satisfy here. First, Burns cannot show that the failure to treat his condition could result in further significant injury or the unnecessary and wanton infliction of pain. When Dr. Wulff examined Burns's x-ray, he determined that the two-year-old fracture did not require additional intervention at that time. ECF No. 38-6 at ¶ 6. Burns disagrees with Dr. Wulff's medical opinion but provides no evidence to support a medical basis for that disagreement, nor does Burns provide evidence that Wulff's treatment plan resulted in him suffering unnecessary and wanton infliction of pain. Burns does not show that Dr. Wulff failed to respond to his pain or possible medical need. Rather, the evidence shows that Dr. Wulff reviewed Burns's x-ray and made a medical determination that the fracture did not require further intervention. ECF No. 38-6 at 3. While Burns disagrees with Dr. Wulff's assessment and questions how he came to this determination, this is not enough to show that Dr. Wulff was deliberately indifferent. *See Toguchi*, 391 F.3d at 1058 (an inmate's disagreement with the

physician regarding his treatment does not amount to deliberate indifference). Therefore, I grant summary judgment in Dr. Wulff's favor.

### IV.     Conclusion

IT IS THEREFORE ORDERED that the defendants' motion for summary judgment [ECF No. 38] is GRANTED.

The Clerk of Court is directed to ENTER JUDGMENT ACCORDINGLY and CLOSE THIS CASE.

DATED: March 29, 2023

_____
Cristina D. Silva
United States District Judge